UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  26-22937-CIV-DAMIAN

ROGER EDUARDO RAMOS PEREZ,

      Petitioner,

v.

KROME SERVICE PROCESSING CENTER,
*Warden*,

      Respondents.

_____/

## OMNIBUS ORDER ON PETITION FOR WRIT OF *HABEAS CORPUS* AND ON PENDING MOTIONS

**THIS CAUSE** is before the Court on Petitioner, Roger Eduardo Ramos Perez's ("Petitioner"), *pro se* Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2241, filed April 27, 2026 [ECF No. 1 (the "Petition")], Petitioner's Motion for Leave to Proceed In Forma Pauperis, filed April 29, 2026 [ECF No. 6], and Motion for Release by Interested Party Billie Jo Ramos, filed on May 12, 2026 [ECF No. 8]. This Court entered an Order to Show Cause [ECF No. 7] on May 5, 2026, and Respondents filed a Response on May 14, 2026. [ECF No. 9].

THE COURT has reviewed the Petition and Response, the Motions, the pertinent portions of the record, and relevant legal authorities and is otherwise fully advised.

### I.     BACKGROUND

The background relevant to Petitioner's immigration status and proceedings before the Immigration Court is set forth in the parties' submissions. *See generally* Pet., Resp.

Petitioner, Roger Eduardo Ramos Perez, is a native and citizen of Cuba who entered the United States on or about April 22, 1980, at or near New York, New York. Resp. at Exh. A, Form I-213, Record of Deportable/Inadmissible Alien (dated Feb. 7, 2026). On August 30, 1982, Petitioner's status was adjusted to that of a lawful permanent resident. *Id*. Petitioner thereafter sustained multiple criminal convictions.

On September 27, 1999, Petitioner was convicted of burglary and grand theft. Resp. at Exh. G, Form I-213, Record of Deportable/Inadmissible Alien (dated July 21, 2009), at 2. Based on those convictions, legacy Immigration and Naturalization Service initiated removal proceedings. On April 5, 2001, INS issued and served Petitioner with a Notice to Appear pursuant to section 240 of the Immigration and Nationality Act. Resp. at Exh. B, Notice to Appear (dated Apr. 5, 2001). The NTA charged Petitioner with removability under section 237(a)(2)(A)(iii) of the INA based on his conviction for an aggravated felony, namely a theft or burglary offense for which the term of imprisonment was at least one year. *Id*.

On May 21, 2001, an Immigration Judge entered an order of removal against Petitioner and ordered him removed to Nicaragua or, in the alternative, to Cuba. Resp. at Exh. C, Order of the Immigration Judge, Removal Order (dated May 21, 2001). On or around September 3, 2001, Petitioner was released on an Order of Supervision ("OSUP"). Resp. at Exh. F, Detention History.

Petitioner thereafter incurred additional criminal convictions. On January 18, 2005, Petitioner was convicted of resisting an officer without violence. Resp. at Exh. G at 2. On August 15, 2005, Petitioner was convicted of grand theft, burglary, and possession of burglary tools. *Id*. On April 5, 2017, Petitioner was convicted of fleeing and eluding a police officer and driving while license suspended, for which he was sentenced to one year and one day

imprisonment. Resp. at Exh. A at 2–3. Petitioner was also convicted of resisting an officer without violence and sentenced to 262 days' imprisonment. *Id.* Upon completion of his sentence, Petitioner was taken into Immigration and Customs Enforcement ("ICE") custody. Resp. at Exh. H, Form I-213, Record of Deportable/Inadmissible Alien (dated May 12, 2017), at 3; *see also* Resp. at Exh. F. On August 16, 2017, Petitioner was again released on OSUP. Resp. at Exh. F.

On February 5, 2026, ICE Enforcement and Removal Operations encountered Petitioner at the Turner Guilford Knight Correctional Center in Miami, Florida, following Petitioner's arrest for aggravated battery with a deadly weapon, domestic violence. Resp. at Exh. A at 2. During that encounter, ICE revoked Petitioner's OSUP and took him into custody. *Id.* On March 26, 2026, Petitioner was transferred to the Krome North Service Processing Center in Miami, Florida. Resp. at Exh. F. Petitioner remains in ICE custody pending execution of his removal order. *Id.*

Petitioner filed the Petition on April 27, 2026. In the Petition, Petitioner avers that his detention is unlawful and unconstitutional and seeks release from custody and bond hearing. *See* generally Pet. Petitioner also filed a Motion for Leave to Proceed *in forma pauperis*. [ECF No. 6]. And, on May 12, 2026, Petitioner's husband, Billie Jo Ramos, filed a Motion for Release by Interested Party in which he urges the release of the Petitioner, citing medical and health issues that are not being addressed while Petitioner has been in custody. See ECF No. 8.

Respondents filed a Response to the Court's Order to Show Cause on May 14, 2026. [ECF No. 9]. In the Response, Respondents argue that this Court lacks jurisdiction to prevent

the execution of the removal order and that the amount of time Petitioner has been detained is presumptively reasonable. *See* generally Resp.

## II.   DISCUSSION

### A.  *Petitioner's Detention is Governed by the Post-Removal Statutory Framework*

As an initial matter, the parties do not dispute that an Immigration Judge entered a final order of removal against Petitioner on May 21, 2001, ordering him removed to Nicaragua or, alternatively, to Cuba. Resp. at Exh. C, Order of the Immigration Judge, Removal Order (dated May 21, 2001). Nor is there any indication in the record that Petitioner appealed that removal order to the Board of Immigration Appeals. See Pet. at 4–5; Resp. at 2. Under the Immigration and Nationality Act, an order of removal becomes administratively final upon either "a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order." 8 U.S.C. § 1101(a)(47)(B). Where, as here, the time to appeal has expired and no appeal was taken, the removal order is administratively final by operation of statute.

### B.  *This Court Lacks Jurisdiction To Hear Petitioner's Challenge To The Order Of Removal.*

In the Petition, Petitioner asks this Court to order his immediate release. To the extent Petitioner is challenging the order of removal, this Court agrees with the Respondents that this Court lacks jurisdiction to hear such a challenge. *See* 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by … any alien arising from the decision or action by [ICE] to … execute removal orders against any alien."); *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1273 (11th Cir. 2021) ("Section 1252(g) bars review over 'any' challenge to the execution of a removal order – and makes no exception for those claiming to challenge the government's 'authority' to execute their removal orders.").

4

### C. *Any Challenge To The Statutory Basis For Detention Is Not Ripe.*

As indicated above, Petitioner's removal order is administratively final. The consequence of that finality is dispositive. Once a removal order becomes administratively final, the statutory "removal period" begins. *See* 8 U.S.C. § 1231(a)(1)(B)(i) (providing that the removal period begins on "the date the order of removal becomes administratively final"). During and following that period, detention is governed by 8 U.S.C. § 1231, the post-removal detention framework, not by the pre-removal detention provisions of 8 U.S.C. § 1226. Accordingly, Petitioner's detention is governed by § 1231.

Because Petitioner's detention is governed by § 1231, his challenge to the statutory basis for that detention under any pre-removal framework is no longer ripe for review. The only cognizable inquiry at this stage is whether his post-removal detention has become constitutionally unreasonable under *Zadvydas v. Davis*, 533 U.S. 678 (2001), an issue addressed separately below.

### D. *Petitioner's Claim of Indefinite Detention Is Not Ripe.*

The Supreme Court's decision in *Zadvydas v. Davis* provides the governing framework for evaluating Petitioner's challenge to his post-removal-period detention.

In *Zadvydas*, the Court considered whether 8 U.S.C. § 1231(a)(6) authorizes the indefinite detention of noncitizens subject to final orders of removal. The Court held that it does not. Rather, construing the statute in light of constitutional concerns, the Court recognized an implicit temporal limitation on detention.

Critically, the Court explained:

"In order to limit the occasions when courts will need to make the difficult judgments called for by the recognition of this necessary Executive leeway, it is practically necessary to recognize a presumptively reasonable period of detention. It is unlikely that Congress believed that all reasonably foreseeable

> removals could be accomplished in 90 days, but there is reason to believe that it doubted the constitutionality of more than six months' detention. Thus, for the sake of uniform administration in the federal courts, six months is the appropriate period. After the 6–month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing."

*Id*. at 701. Thus, *Zadvydas* establishes a two-step framework.

First, detention for a period of up to six months following the commencement of the removal period is presumptively reasonable and authorized by statute. During that time, the Court affords the Executive Branch "necessary… leeway" to effectuate removal. *Id*.

Second, only after that six-month period has elapsed does the burden shift to the noncitizen to demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. If such a showing is made, the Government must rebut it with sufficient evidence to justify continued detention. *Id*.

Importantly, *Zadvydas* does not require release after six months. Rather, it establishes a burden-shifting inquiry triggered only after that period has passed. Detention remains permissible unless and until the noncitizen satisfies the threshold showing and the Government fails to rebut it.

Here, the record reflects that Petitioner was taken into ICE custody on February 5, 2026. Resp. at 3. Petitioner filed the instant Petition on April 27, 2026. Accordingly, his detention remains within the "presumptively reasonable period" recognized by the Supreme Court, and no further inquiry under *Zadvydas* is warranted at this time. And, because Petitioner cannot satisfy the threshold requirement for invoking *Zadvydas*, his habeas challenge to his continued detention is premature and must be denied. *See Akinwale v. Ashcroft*,

287 F.3d 1050, 1052 (11th Cir. 2002) (holding that a petitioner "cannot state a claim under *Zadvydas* until the six-month period has expired.").

### III.    CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that the Petition [**ECF No. 1**] is **DENIED WITHOUT PREJUDICE**. It is further

**ORDERED** that the Motion for Leave to Proceed *In Forma Pauperis* **[ECF No. 6]** is **DENIED** as moot. It is further

**ORDERED** that the Motion for Release by Interested Party Billie Jo Ramos **[ECF No. 8]** is **DENIED**.

The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 27th day of May, 2026.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Roger Eduardo Ramos Perez, *Pro Se*
       A# 022961598
       Krome North Service Processing Center
       Inmate Mail/Parcels
       18201 SW 12th Street
       Miami, FL 33194

7